

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

DICE CORPORATION,

     Plaintiff,

v.

BOLD TECHNOLOGIES, LTD,

     Defendant.

Case No. 11-CV-13578

District Judge: Hon. Thomas L. Ludington

Magistrate Judge: Hon. Mark A. Randon

---

| | |
|---|---|
| Craig W. Horn (P34281) | R. Christopher Cataldo (P39353) |
| Braun Kendrick Finkbeiner PLC | David S. McDaniel (P56994) |
| Attorney for Plaintiff | Jaffe, Raitt, Heuer & Weiss, PC |
| 4301 Fashion Square Blvd. | Attorneys for Defendant |
| Saginaw, MI 48603 | 27777 Franklin Rd., Ste. 2500 |
| (989) 498-2100 | Southfield, MI 48034 |
| crahor@bkf-law.com | (248) 351-3000 |
| | ccataldo@jaffelaw.com |
| | dmcdaniel@jaffelaw.com |
| | |
| | Peter M. Falkenstein (P61375) |
| | Jaffe, Raitt, Heuer & Weiss, PC |
| | Attorneys for Defendant |
| | 201 S. Main St., Ste. 300 |
| | Ann Arbor, MI 48104 |
| | (734) 222-4776 |
| | pfalkenstein@jaffelaw.com |

---

## DEFENDANT'S RENEWED MOTION FOR RECOVERY OF ATTORNEY'S FEES AND COSTS

Defendant Bold Technologies, Ltd. ("Bold"), by its undersigned counsel,

brings this motion to recover its attorney's fees and costs from Plaintiff Dice

Corporation ("Dice") and/or its counsel.  Bold prevailed in this matter in its entirety when the Court issued its Opinion and Order Granting Defendant's Motion for Summary Judgment and Dismissing Complaint with Prejudice on October 25, 2012 (the "Opinion").  The Opinion, which was affirmed in full by the Sixth Circuit, contained a detailed analysis of Dice's claims and the complete lack of any factual or legal support for those claims.

As the prevailing party, in the District Court and in the Sixth Circuit, Bold should be awarded its costs and fees pursuant to the Copyright Act and the Digital Millennium Copyright Act.  Further, as explained more fully in the brief accompanying this motion, Dice brought, maintained, and prosecuted this lawsuit in bad faith and in a vexatious manner, resulting in Bold's unnecessary expenditure of many thousands of dollars in fees and costs.  For this reason, an award of fees and costs to Bold is also warranted under the Michigan Uniform Trade Secrets Act, 28 U.S.C. § 1927 and the Court's inherent authority to award fees and costs.

Bold sought concurrence in the relief requested in this motion, but concurrence was not obtained.

For the reasons stated above, as explained more fully in the accompanying brief, Bold requests that the Court enter and order:

(a)     Granting this motion;

(b)      Requiring Dice and/or its counsel to pay to Bold within 21 days of the date of entry of such order the amount of **$277,599.11** for fees and costs billed to Bold through January 31, 2014;

(c)      Requiring Dice and/or its counsel to make payment to Bold, within 21 days of the date of entry of such order, for amounts billed to Bold after January 31, 2014 (to be provided); and,

(d)      Granting such other relief as the Court deems appropriate.

Respectfully submitted,

Jaffe, Raitt, Heuer & Weiss, P.C.

/s/ R. Christopher Cataldo
R. Christopher Cataldo (P39353)
David S. McDaniel (P56994)
Attorneys for Defendant
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
Dated: March 12, 2014                    (248) 351-3000

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

DICE CORPORATION,

      Plaintiff,

v.

BOLD TECHNOLOGIES, LTD,

      Defendant.

Case No. 11-CV-13578

District Judge: Hon. Thomas L. Ludington

Magistrate Judge: Hon. Mark A. Randon

_____

| | |
|---|---|
| Craig W. Horn (P34281) | R. Christopher Cataldo (P39353) |
| Braun Kendrick Finkbeiner PLC | David S. McDaniel (P56994) |
| Attorney for Plaintiff | Jaffe, Raitt, Heuer & Weiss, PC |
| 4301 Fashion Square Blvd. | Attorneys for Defendant |
| Saginaw, MI 48603 | 27777 Franklin Rd., Ste. 2500 |
| (989) 498-2100 | Southfield, MI 48034 |
| crahor@bkf-law.com | (248) 351-3000 |
| | ccataldo@jaffelaw.com |
| | dmcdaniel@jaffelaw.com |
| | |
| | Peter M. Falkenstein (P61375) |
| | Jaffe, Raitt, Heuer & Weiss, PC |
| | Attorneys for Defendant |
| | 201 S. Main St., Ste. 300 |
| | Ann Arbor, MI 48104 |
| | (734) 222-4776 |
| | pfalkenstein@jaffelaw.com |

_____


## BRIEF IN SUPPORT OF DEFENDANT'S RENEWED MOTION
## FOR RECOVERY OF ATTORNEY'S FEES AND COSTS

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUE PRESENTED.................................................................. ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. iii

INTRODUCTION ..........................................................................................1

STATEMENT OF FACTS ..............................................................................2

    1.    Dice Never Had Any Evidence to Support its False Claims.................2

    2.    Dice Broadcasts its False Allegations to the Alarm Industry ..............4

    3.    Dice Engages in Other Vexatious Conduct.........................................5

    4.    Dice Moves For Reconsideration and an Indicative Ruling ................9

    5.    The Sixth Circuit Affirms the Court in Full.......................................11

ARGUMENT..................................................................................................12

    1.    As the Prevailing Party Bold is Entitled to an Award of Costs and Fees Under the Copyright Act and the DMCA ............................12

    2.    Bold is Entitled to Recover Costs and Fees Under MUTSA Because Dice Brought its Trade Secret Claim in Bad Faith ...............17

    3.    Dice and its Counsel Engaged in Unreasonable and Vexatious Conduct...............................................................................................21

    4.    Determining an Award of Fees and Costs..........................................23

CONCLUSION ...............................................................................................24

i

## <u>STATEMENT OF ISSUE PRESENTED</u>

Should Bold be awarded its costs and fees in this matter under the Michigan Uniform Trade Secrets Act, the Copyright Act, the Digital Millennium Copyright Act, 28 U.S.C. § 1927, and/or pursuant to the Court's inherent authority to award costs and fees where Bold was the prevailing party, Dice brought and maintained this lawsuit in bad faith, with no factual support for the claims alleged, and Dice litigated the lawsuit in an unreasonable and vexatious manner?

Bold answers "Yes."

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Bold seeks recovery of its fees and costs pursuant to the following statutory provisions, as interpreted and applied by the cited case law:

    (a)      Section 5 of the Michigan Uniform Trade Secrets Act, MCL 445.1905;

    (b)      17 U.S.C.A. § 505 (Copyright Act);

    (c)      17 U.S.C. § 1203(b)(4) and (5) (Digital Millennium Copyright Act);

    (d)      28 U.S.C. § 1927.

Bold also seeks recovery of its fees and costs pursuant to the Court's inherent authority to render such an award, as described in, among other cases, *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002).

## **INTRODUCTION**

Dice and Bold are competitors in the alarm monitoring software business. Through research, development, and hard work, Bold has achieved great success in the marketplace with its cutting edge, Windows-based software. It counts among its clients over 20 former Dice customers. When yet another customer, ESC, took its business to Bold, Dice pounced on what it saw as an opportunity to try to accomplish through the courts what it could not do by competing fairly in the marketplace -- stem the tide of customers moving over to Bold. Dice concocted a lawsuit which its own employees and principal, Cliff Dice, knew lacked any factual basis whatsoever – a fact they admitted at their respective depositions. Then, Dice immediately broadcast its false allegations to the press and to alarm companies that were potential customers of Bold, accusing Bold of using underhanded, illegal tactics to steal away Dice's customers.

In the end, Dice's scheme and the fabrication of its claims were exposed. The Court granted summary judgment to Bold, finding that Dice had no evidence to support any of its claims. The Sixth Circuit affirmed the Court's decision in full. The correct result was reached in the end, but not without tremendous burden to Bold, which has incurred attorney's fees and costs of almost $300,000 defending itself against Dice's meritless claims and its equally meritless appeal. Dice's actions were, and are, completely unjustifiable. Now, it should be made to bear the

1

consequences of its actions through an order compelling it to pay the substantial

costs and fees Bold has incurred.

## STATEMENT OF FACTS

### 1.     Dice Never Had Any Evidence to Support its False Claims

When Dice learned that it had lost ESC's business to Bold, it filed suit

accusing Bold of hacking into Dice's servers and stealing allegedly proprietary

"signal processing intelligence."  (Dice's Second Amended Complaint [the

"SAC"], Doc # 20 ¶ 12.)  Dice amended its complaint twice, ultimately bringing

claims for violations of the Michigan Uniform Trade Secrets Act ("MUTSA"), the

Copyright Act, the Digital Millennium Copyright Act ("DMCA"), and the

Computer Fraud and Abuse Act ("CFAA").  *Id.*

Each of Dice's claims was based upon the allegation stated in Paragraph 12

of the SAC:

> At various points prior to July 12, 2011, Ms. Condon accessed Dice
> servers located in Dice's Bay City facility and accessed electronic file
> layouts that contained proprietary signal processing intelligence
> software.  At various times between July 12, 2011 and July 25, 2011,
> Ms. Condon accessed Dice servers located at client sites and initiated
> file transfers of proprietary signal processing intelligence software.

The Court's Opinion of October 25, 2012 (Doc # 93) granting Bold's motion

for summary judgment details the absence of any evidence to support the

wrongdoing alleged in the SAC; the contradictory and false statements made by

Dice; and the lack of any legitimate basis for Dice to bring the claims asserted against Bold.  Some of the key findings from the Opinion are summarized below:

- Dice's opposition to Bold's summary judgment motion was "based on conclusory assertions, not evidence."  (p. 1);

- Cliff Dice submitted an affidavit denying that ESC left Dice because of quality issues despite the existence of contemporaneous emails between he and ESC's Kristi Harris showing that ESC was having ongoing quality problems with the Dice software and that it left Dice because of Dice's inability to resolve those problems.  (pp. 5-6);

- Mr. Dice admitted at his deposition that Dice had not seen Bold's source code, had no evidence that Bold copied Dice source code, and thus could only assume that Bold had done so.  (pp. 9-10);

- Mr. Dice acknowledged that Dice's software was not encrypted.  (p. 10);

- Mr. Dice acknowledged at his deposition that Dice had no evidence that Ms. Condon accessed Dice servers.  (p. 12);

- Mr. Dice testified that customers were not allowed to see the ALSCHART, and also stated the same in an affidavit, when Dice's own director of software development, Julie Coppens, had acknowledged that customers were allowed to freely access the ALSCHART.  (pp. 13-14);

- Ms. Coppens acknowledged that Dice had no evidence of any unlawful computer access by Bold.  (p. 15);

- Ms. Condon's alleged unlawful accessing of the ALSCHART was accomplished after Bold had already converted all of ESC's customer information to Bold's software; the query run on the ALSCHART was not initiated by Ms. Condon, but by an ESC employee; and the access to the Dice software was gained using Ms. Harris's own personal log-in.  (pp. 17-18);

- Dice could not establish the first element of a MUTSA claim because the undisputed evidence in the record established that the data in the ALSCHART "was not a secret, much less Plaintiff's trade secret." (pp. 23-25); Dice failed to present any evidence to establish any element of a MUTSA claim. (*Id.*);

- Dice provided no evidence to support its conclusory assertion that Bold had improperly taken Dice's software and used it to convert customer data; the undisputed evidence established just the opposite – that Bold did not use Dice's software (pp. 27-28);

- Dice presented no evidence that Bold circumvented a Dice security measure to gain access to Dice's copyrighted materials. Deposition testimony established that no such access had occurred. (pp. 27-31);

- Dice made no attempt to identify any original, copyrightable elements of its software that Bold had copied, nor did present any evidence that Bold used its software for alarm monitoring purposes. (pp. 34-36);

- Dice's chief technical officer confirmed that Dice had no evidence that any Bold employee had accessed a Dice server. (pp. 37-38).

This summary shows that Dice simply took a shot in the dark in filing this action and that the suit had no foundation from the beginning. Indeed, it appears clear that Dice knew from the beginning that its suit had no basis, but was willing to do anything, including the maintenance of a frivolous and vexatious suit, to try to stem the flow of customers from Dice to Bold.

### 2. Dice Broadcasts its False Allegations to the Alarm Industry

Not content to assert false claims against Bold, Dice also made sure the industry would be aware of the lawsuit and of what Bold had allegedly done. Shortly after filing suit, Dice sent a letter to its customers, attaching the complaint

filed in this case.  (**Ex. 1**, Dice Letter.)  How many companies received this letter, or one like it, is unknown because Dice concealed the letter in discovery despite discovery requests by Bold for this information.  The letter came to Bold's attention only when it received a copy from a third-party.  Bold filed a motion to compel (Doc # 59), which was granted (Doc # 81), and a motion for spoliation sanctions (Doc # 88) based upon Dice's concealment of this document.   Despite Bold's motions and an order of the Court, Dice never explained what happened to this letter and why it was not produced.

The letter came on the heels of a September 1, 2011 article posted by the Security System News ("SSN") website, and other industry websites, discussing the lawsuit and Dice's allegations.  (**Ex. 2**, SSN article.)  SSN could realistically have learned of the lawsuit from only two sources, Dice and Bold, and Bold certainly did not alert SSN to its filing.  This article and the letter evidence Dice's ulterior motive in filing suit, which was to create as much negative publicity about Bold as it could using its false allegations of the lawsuit.

### 3.    Dice Engages in Other Vexatious Conduct

Dice also failed throughout the course of the case to comply with its obligations under the Federal Rules of Civil Procedure.  In addition to the discovery issue discussed above, Dice did not provide the damages information required under Rule 26(a)(1)(A)(iii) in its initial disclosures and then repeatedly

refused to provide this information.  Bold incurred increased expenses as a result, as it was forced to file motions to try to determine the damages Dice was claiming. Bold filed the first of these motions (Doc # 39) on May 4, 2012.  The case had been pending for nine months at that point, and Dice still had not provided any calculation of its purported damages despite requests by Bold's counsel.  Bold thus filed a motion to compel Dice to provide the damages disclosures information required under Rule 26.  Bold refers the court to the motion and brief for a more detailed explanation of the facts and circumstances surrounding Bold's efforts to obtain this information and Dice's refusal to provide it.

Discovery closed in the case on May 31, 2012.  (Doc # 13.)  On that date, Bold's counsel received from Dice's counsel a document purporting to be a Dice balance sheet and a letter from a CPA attempting to explain Dice's purported software development costs.  This was, apparently, supposed to show the value of the Dice software Bold allegedly misappropriated.  The CPA's "analysis," however, did not state the amount of damages Dice was claiming, and Bold was given nothing from which it could ascertain Dice's damage claim.  Thus, ten months into the case, Bold still had no idea of the amount of damages Dice claimed to have sustained.  Moreover, the CPA had never before been identified as an expert in the case, despite an April 30, 2012 deadline for naming experts. Based on Dice's continuing refusal to provide damages information and its

untimely disclosure of the CPA, Bold filed a motion pursuant to Fed. R. Civ. P. 37(C)(1) to bar Dice from presenting any damages evidence at trial.  (Doc # 49.)

Dice's failure to comply with the federal rules also resulted in Bold's filing of a motion *in limine* to exclude certain lay witnesses and exhibits.  Under the Court's scheduling order, the parties were required to submit their pretrial disclosures by June 18, 2012.  (*See* Doc # 13.)  On June 18, Bold filed its disclosures in compliance with Fed. R. Civ. P. 26(a)(3)(A), identifying the witnesses Bold expected to call at trial, the witnesses it might call at trial, and its expected trial exhibits.  (Doc # 52.)  Dice filed a document entitled "Plaintiff's List of Trial Witnesses."  (Doc # 53.)  In this filing, Dice named three witnesses whom it had not previously identified as possible witnesses.  Also, Dice completely omitted a list of its trial exhibits, as required by Rule 26(a)(3)(A)(iii).  To protect itself from unfair surprise at trial, Bold filed a motion to bar these witnesses from testifying and to prevent Dice from introducing any exhibits.  (*See* Doc # 65.)

Dice's response to Bold's summary judgment motion also resulted in Bold incurring additional costs that it should not have had to incur.  With its response, Dice submitted an affidavit from Mr. Dice containing what amounted to expert testimony regarding the purported capabilities and operation of the Bold extraction program, which Mr. Dice claimed to have analyzed.  (Doc # 78-2.)  Mr. Dice did

not provide any information in the affidavit showing that he was qualified to give an opinion regarding the program.  Nonetheless, Mr. Dice stated in Paragraph 6 of the affidavit that "[t]he program which Bold has created for converting information belonging to Dice customers cannot operate without access to Dice software and the source code contained within that software."  *Id.*  Dice had been in possession of the code for Bold's program for months, but Dice never provided any notice that it intended to offer expert testimony through Mr. Dice.  Moreover, the statement Mr. Dice made regarding Bold's program was patently false.  Bold was forced to incur the time and expense of having its expert, Dr. William McUmber, prepare a rebuttal report refuting Mr. Dice's false statements.  (Doc # 85-8.)  Bold also had to incur the time and expense of obtaining a supplemental affidavit from Bold's Matt Narowski (Doc # 85-7) to rebut Mr. Dice's clearly uninformed "analysis" of the program, and to rebut other false assertions by Mr. Dice.

　　　　Dice's vexatious litigation of the case was also apparent in its eleventh-hour recrafting of its claims in an attempt to avoid summary judgment.  Whereas Dice alleged in its SAC that Ms. Condon hacked into Dice's servers and stole proprietary signal processing intelligence, it argued in response to Bold's summary judgment motion that it was Mr. Narowski who hacked into Dice servers during a "gotoassist" session with Doyle Security (not ESC).  (*See* summary judgment order, Doc # 93 at 39-40.)  This assertion was baseless, as the Court found.   Dice

8

also shifted gears by arguing that Bold had stolen Dice's software and then used it for the principal purpose for which it was designed.  No such claim was alleged in the SAC, and the Court found this argument to be meritless as well.  *Id*. at 34-36.

### 4.    Dice Moves For Reconsideration and an Indicative Ruling

Dice saved its most desperate tricks for last.  On November 8, 2012, it filed a motion for reconsideration (Doc # 95) containing a blatantly false contention that Bold had withheld a complete copy of the Bold extract program from Dice until September 26, 2012.  In fact, Dice had the complete program in its possession since May of 2012 and knew that it had the complete program, yet misrepresented to the Court that it did not receive this information until the deposition of Dr. McUmber on September 26.  Bold's response to the reconsideration motion (Doc # 97) exposed Dice's scheme to mislead the Court.  But again, Bold was forced to incur thousands of dollars in fees to refute Dice's frivolous assertions.[1]

The Court issued an Opinion and Order of March 28, 2013 (Doc # 104) denying Dice's motion for reconsideration.  While the Court declined to impose sanctions at the time, it noted the "troubling" misstatements made by Dice in the motion:

[T]he evidence proffered is not new.  More than a month before Plaintiff filed its motion for summary judgment, a copy of the entire extraction

---

[1] Dice filed its notice of appeal of the Court's order granting summary judgment while the reconsideration motion was pending.  (Doc # 100.)

9

program was produced by Defendant.  **Plaintiff's factual inaccuracy on this point is troubling.  More troubling, however, is Plaintiff's mischaracterization of the evidence itself**.  The document that Plaintiff relies on in its motion for reconsideration is not a new copy — it is the same copy of the entire extraction program, but with Defendant's expert's notes interlineated.  And Plaintiff knew this before filing the motion; it was made plain in the expert's deposition.  **Although the Court chooses not to impose sanctions at this time, it cautions Plaintiff's counsel that such mischaracterizations will not be condoned**.

*Id*. at 2 (emphasis added).

Instead of acknowledging the obvious lack of merit in its case at that point, Dice dug an even deeper hole.  On May 16, 2013, Dice filed its Motion for Indicative Ruling & Relief from Judgment (Doc # 107).  In the motion, Dice claimed that a "clerical error" had led it to attach the wrong exhibit to its failed reconsideration motion – filed a full seven months earlier – and that the document it purportedly meant to attach would justify relief from the summary judgment order.  Based on this belated revelation, Dice asked the Court to issue an "indicative" ruling that it would grant relief from the summary judgment order, or that a substantial issue had been raised.

On May 20, 2014, the Court issued an Opinion and Order (Doc # 108) denying Dice's motion for an indicative ruling.  The Court found that Dice had failed to offer any cogent explanation to support its contention that the newly proffered document justified granting relief from the summary judgment order.  As the Court stated, "[o]nce again, Plaintiff's argument is based on conclusory

assertions, not reasoned explanations."  (Doc # 108 at 2.)  From the summary

judgment motion to the motion for an indicative ruling, Dice's arguments were

soundly rejected at each step along the way.

### 5.    The Sixth Circuit Affirms the Court in Full

Dice pressed on in the Sixth Circuit, which affirmed the Court's summary

judgment order, the denial of the motion for reconsideration and the denial of the

motion for an indicative ruling.  (Case Nos. 12-2513, 13-1712.)  The Sixth Circuit

noted in several places Dice's failure to present any evidence to the Court to

support its claims and the vague and conclusory nature of its ever-shifting

allegations.

The mandate issued from the Sixth Circuit issued on February 19, 2014.

Bold previously filed a motion for recovery of fees and costs on November 21,

2012 (Doc # 99).  The Court entered an order on April 11, 2013 (Doc # 106)

denying the motion without prejudice.  The Court reasoned that if Dice prevailed

on appeal, Bold would not be entitled to fees and, therefore, that deciding the

motion would result in waste of judicial resources.  *Id*. at 2. Conversely,

> if Plaintiff does not prevail on appeal, Defendant will almost certainly seek
> to recoup the expenses that it incurred on appeal. [citing *Quigley v. Gov't
> Emps. Ins. Co.*, 2008 WL 384561, at *1 (M.D. Fla. Feb. 11, 2008)]. And
> efficiency favors resolving all of the fee requests at once rather than
> piecemeal.

*Id*; *see also, e.g., Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 578 (5th Cir. 2003)

(Stating that "Array correctly asserts…that it may recover additional attorneys' fees

as a successful appellee"; and remanding to district court for determination of fees

under Copyright Act.)  The Court further stated that "if Defendant prevails on

appeal, it will be permitted 21 days after the issuance of the mandate to file a

request for attorney fees."  *Id*. at 2.  Having prevailed on appeal, Bold submits this

motion to recover its fees and costs, including those incurred on appeal.

## ARGUMENT

### 1.  As the Prevailing Party, Bold is Entitled to an Award of Costs and Fees Under the Copyright Act and the DMCA

The Copyright Act provides that "the court in its discretion may allow the

recovery of full costs by or against any party…" and that "the court may also

award a reasonable attorney's fee to the prevailing party as part of the costs."

17 U.S.C.A. § 505.  The DMCA contains virtually identical provisions.  17 U.S.C.

§ 1203(b)(4), (5) ("[T]he court … in its discretion may allow the recovery of costs

by or against any party…; [and] in its discretion may award reasonable attorney's

fees to the prevailing party.")  The Sixth Circuit has held that the discretion

accorded to a district court "must be exercised in an evenhanded manner with

respect to prevailing plaintiffs and prevailing defendants, and in a manner

consistent with the primary purposes of the Copyright Act." *Bridgeport Music, Inc.*

*v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (citing *Fogerty v. Fantasy,*

*Inc.*, 510 U.S. 517, 534 (1994)).  Further, "[t]he grant of fees and costs 'is the rule

rather than the exception and [they] should be awarded routinely.'"  *Bridgeport*

*Music*, 520 F.3d at 592 (citation omitted).

"There is no precise rule or formula for making these determinations, but

instead equitable discretion should be exercised in light of the considerations we

have identified."  *Id*.  A court may consider "several nonexclusive factors … when

considering a request for fees and costs, including 'frivolousness, motivation,

objective unreasonableness (both in the factual and legal components of the case)

and the need in particular circumstances to advance considerations of

compensation and deterrence.'"  *Id*. (citations omitted).  "The factors need not all

weigh in favor of an award in order to grant fees to a prevailing party and other

factors may be considered."  *Id*.

Further, where a prevailing party is entitled to recover the fees and costs it

incurred in successfully defending against a copyright claim, the Copyright Act

permits recovery of the fees incurred in defending against "related" non-copyright

claims.  *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833-35 (9th

Cir. 2003); *Atlantic Recording Corp. v. Andersen*, 2008 WL 2536834, at *2 (D. Or.

June 28, 2008) ("Contrary to Atlantic's argument, efforts expended on unsuccessful

related non-copyright claims may be compensable."); *see also Hensley v.*

*Eckerhard*, 461 U.S. 424, 433-35 (1983); *Nat'l Org. for Women v. Operation*

*Rescue*, 37 F.3d 646, 653 (D.C. Cir. 1994) ("An award of attorneys' fees may properly extend to related pendent state law claims" if the party also prevails on its federal claim.)

Because Bold obtained summary judgment of Dice's copyright infringement DMCA claims, and summary judgment was affirmed on appeal, Bold is the prevailing party as to both claims.  Looking to the factors identified in *Bridgeport Music*, Dice's claims were frivolous and objectively unreasonable.  The copyright infringement claim alleged in the SAC was that Bold's data extraction program was a "derivative work" of Dice's copyrighted programs and that Bold had willfully infringed on Bold's copyrights.  (SAC ¶¶ 25-29.)  Mr. Dice's deposition testimony demonstrates the complete lack of foundation for this claim.   Mr. Dice acknowledged that he had never looked at Bold's source code, that he had no evidence of any copying of Dice's copyrighted software, and that Dice's allegation of copying was nothing more than "'an assumption.'"  (Doc # 93 at 9-10.)  Dice thus had no basis whatsoever to bring its "derivative work" allegation.

Mr. Dice made another significant admission demonstrating that there was no basis for Dice to pursue the infringement claims alleged in the SAC.  These claims were based on alleged copying of three of Dice's copyrighted receiver driver programs -- the Standard Ademco Driver, the DMP Receiver, and the Surgard Receiver.   (SAC ¶ 9.)  The copyright registrations for these programs

were obtained after Dice filed this lawsuit.  When asked at his deposition if ESC

had even been utilizing any of these programs, Mr. Dice admitted that he had no

idea.  (*See* **Ex. 3**, pp. 58-59 of transcript of deposition of Cliff Dice.)  Thus, beyond

the fact that Dice had no evidence that Bold had copied any of its code, Dice

moved forward with its copyright infringement claim with willful disregard of

whether ESC was actually running any of the programs Bold allegedly copied.  Mr.

Dice's testimony shows that Dice did not perform even the most basic due

diligence before bringing its copyright infringement claim.

Further, when Dice apparently came to the realization that its "derivative

work" theory was baseless, it abandoned the theory entirely and unveiled a new

one in its summary judgment response brief – that Bold had loaded Dice software

onto a computer and then used the software for the principal purpose for which it

was designed.  The Court rejected this theory as well based on the complete

absence of any supporting evidence.  (Doc # 93 at 32-36.)

Mr. Dice made additional admissions with respect to the DMCA claim.

Dice alleged in the SAC that its software was encrypted and that Bold had

circumvented this encryption.  (SAC ¶¶ 20-24.)  As noted above, Dice alleged this

claim without knowing whether ESC was actually running any of the copyrighted

receiver driver programs Bold was alleged to have accessed.  Additionally, Mr.

Dice admitted – in direct contravention of the allegations of the SAC – that Dice's

software was **not** encrypted.  (Doc # 93 at 10; *see also* SAC ¶ 21 ["Dice's encryption of its software is a technological measure that effectively controls access to its products."])  Thus, Dice brought a claim that its own principal knew from the outset was false.  Dice didn't stop there.  It then filed a baseless motion for reconsideration of the dismissal of its copyright claim based on the false claim that Bold had withheld key evidence (*i.e.*, the complete Bold extract program).

Dice's copyright infringement and DMCA claims were factually and legally baseless, and the deposition testimony reveals that Dice either knew this to be true or proceeded with disregard for whether the allegations were or could be supported.  Moreover, there is ample indication that Dice filed suit for the ulterior purpose of damaging Bold's ability to compete in the marketplace.  Based on the foregoing, and the Sixth Circuit's admonition that "[t]he grant of fees and costs 'is the rule rather than the exception and [they] should be awarded routinely,'" *Bridgeport Music*, 520 F.3d at 592 (citation omitted), Bold submits that it should be awarded its fees and costs as the prevailing party under the Copyright Act and the DMCA.

Bold further submits that if the Court determines that a fee award is justified, Bold should be awarded the full amount of its request under the rule cited above providing that fees may be awarded to a prevailing party under the Copyright Act for both copyright claims and related, non-copyright claims.  *The Traditional Cat*

*Ass'n*, 340 F.3d at 833-35 (9th Cir. 2003).  Here, the copyright claims and the non-copyright claims (the MUTSA and CFAA claims) alleged in the SAC all arose out of the same set of alleged facts or course of conduct, *i.e.*, that Bold hacked into Dice servers in the course of transferring ESC over to Bold's system from Dice's system and that Bold used this access to steal Dice's protected intellectual property.  *See, e.g., Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) (finding that civil rights plaintiff's claims were "related" for purposes of fee award under 42 U.S.C. § 1988 where "all his claims arose out of a common core of facts and a common course of conduct: Plaintiff's arrest, detention, and prosecution.")  These allegations, false as they were, provided the basis for each of the claims asserted by Dice.  Because of the relationship between the copyright and the non-copyright claims, a fee award on all claims is justified under the Copyright Act and/or the DMCA.

### 2. Bold is Entitled to Recover Costs and Fees Under MUTSA Because Dice Brought its Trade Secret Claim in Bad Faith

There are additional grounds justifying an award in favor of Bold.  Section 5 of MUTSA, MCL § 445.1905, authorizes a court to award reasonable attorney's fees to a prevailing defendant where a plaintiff has brought a trade secret claim in bad faith.  *Id*. ("If a claim of misappropriation is made in bad faith…the court may award reasonable attorney's fees to the prevailing party.")  Having been granted summary judgment of Dice's MUTSA claim, which was affirmed on appeal, there

is no question that Bold is the "prevailing party." The only issue is whether Dice

brought the claim in bad faith. The record establishes that it did.

The Sixth Circuit has held that "bad faith," as used in MUTSA, "'requires

objective speciousness of the plaintiff's claim…and…subjective bad faith in

bringing or maintaining the claim.'" *Degussa Admixtures, Inc. v. Burnett*, 277

Fed.Appx. 530, 534 (6th Cir. 2008) (citations omitted); *see also Hill v. Best*

*Medical Int'l, Inc.*, 2011 WL 6749036, *4 (W.D. Pa. Dec. 22, 2011) (under

Pennsylvania and California Uniform Trade Secrets Act, "'[o]bjective

speciousness exists where there is a complete lack of evidence supporting

plaintiff's claims…[s]ubjective misconduct exists where a plaintiff knows or is

reckless in not knowing that its claim…has no merit.'") The Court's order

granting summary judgment details Dice's failure to produce any evidence in

support of any element of its MUTSA claim and, conversely, the abundant

evidence demonstrating that the ALSCHART, Dice's alleged trade secret, "was not

a secret, much less Plaintiff's trade secret"; that even if the ALSCHART was a

trade secret, Bold did not acquire it; and that Dice could not establish any

unauthorized use of a trade secret. (Doc # 93 at 23-25.)

None of this should have come as any surprise to Dice because the record

demonstrates that Dice knew, before it filed suit, that it had absolutely no evidence

to support an allegation that Ms. Condon improperly accessed Dice servers and

stole its "proprietary signal processing intelligence."  Cliff Dice, Julie Coppens,

and Josh Greko (Dice's chief technical officer) all admitted in their depositions

that Dice had no evidence that Ms. Condon, or anyone else from Bold, had

accessed any Dice server.  (Doc # 93 at 12, 15, 37-38.)  These admissions are by

themselves enough to support a finding that Dice brought an objectively specious,

indeed frivolous, MUTSA claim in bad faith.  Ms. Coppens' admission that the

ALSCHART could be readily accessed by Dice customers provides further

evidence of Dice's bad faith.  *Id*., pp. 13-14.  Cliff Dice's testimony and affidavit

to the contrary were either fabrications, or were based upon a lack of knowledge of

Dice's own software.

If Dice could somehow be excused for initially filing this frivolous claim,

after the depositions of Mr. Dice, Ms. Coppens, and Mr. Greko in February 2012,

it should have been clear to Dice that it had no basis for continuing to litigate the

claim.  Following these depositions, and based on the admissions that had been

obtained, Bold's counsel sent an email to Dice's counsel requesting that Dice

withdraw its claims. (*See* **Ex. 4**.)  This invitation was, of course, declined, and Dice

pressed ahead with its false allegations.

Dice had every opportunity (1) to determine that its MUTSA claim was

factually baseless, and (2) to refrain from filing the claim or to subsequently

withdraw it.  It chose instead to knowingly litigate what was a baseless claim, as

19

found by this Court and the Sixth Circuit.  Coupled with Dice's widespread

publication of information about the lawsuit shortly after its filing, it is evident that

the lawsuit was just a tool used by Dice to try to impair Bold's reputation and

business prospects.  Similar circumstances led the Sixth Circuit in *Degussa* to

confirm an award of fees to the prevailing defendant under MUTSA:

> The picture that emerges…is not that Degussa had an objectively
> supportable…claim that Burnett was using trade secrets to gain new
> customers and was getting paid extra to do so. Rather, it suggests that
> **Degussa's own product-quality, employee-retention and marketing
> shortcomings led it to file this action in an attempt to slow the bleeding
> from those self-inflicted wounds—to avoid losing additional market
> share** and salespeople to Sika and to convert Burnett's confidentiality
> agreement into a noncompete agreement. As Degussa's vice
> president…said in response to a question about what led the company to
> file this suit: "[I]t was the factors of a couple people leaving—leaving to go
> to Sika, the impact that we thought that was going to have. And then,
> obviously, seeing that impact in the sales numbers."… **Filing a trade-
> secret action to restrain legitimate competition and job mobility,
> needless to say, is not proper**…

*Degussa*, 277 Fed.Appx. at 535-36 (emphasis added.)

Like in *Degussa*, Dice brought and maintained a MUTSA claim that it either

knew or should have known had no evidentiary support, and then compounded

matters by publicizing the lawsuit in complete disregard of the truth and Bold's

reputation.  A finding that Dice made or maintained the claim in "bad faith" and an

award of attorney's fees under Section 5 of MUTSA are warranted for these

reasons.

20

### 3.    Dice and its Counsel Engaged in Unreasonable and Vexatious Conduct

28 U.S.C. § 1927 permits a court to award costs and fees for unreasonable and vexatious litigation conduct.  Vexatious multiplication of proceedings may be found where "an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims."  *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002).  A district court also "has the 'inherent authority to award fees when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (citations omitted).  "A court's 'bad faith' analysis for its inherent authority parallels the 'improper purpose' analysis for [Fed. R. Civ. P. 11]."  *Rasmussen v. Fleetwood Enterprises,* 2007 WL 1106138, *12 (E.D. Mich., April 10, 2007) (citation omitted).

Based on the facts described above, sanctions are warranted under both § 1927 and the Court's inherent authority.  The admissions of Mr. Dice and the other Dice employees demonstrate that Dice and its counsel filed this lawsuit without any factual basis whatsoever and with reckless disregard for the falsity of its allegations:  Mr. Dice knew that Dice did not encrypt its software, yet Dice alleged that it encrypted its software and that Bold circumvented this encryption in violation of the DMCA; Mr. Dice admitted that he had no evidence showing that

21

Bold had copied any Dice code, and admitted that he didn't even know whether
ESC was running any of the copyrighted programs identified in the SAC, yet Dice
alleged that Bold had infringed Dice's copyrights in those programs; Mr. Dice, Ms.
Coppens and Mr. Greko all agreed that there was no evidence showing that Ms.
Condon or any other Bold employee had accessed a Dice server, yet Dice alleged
that Ms. Condon hacked into Dice servers and stole proprietary signal processing
intelligence (which turned out not to be proprietary at all).

Nothing Dice alleged had any basis in fact, and Dice knew its claims were
false, or at the very least, turned a blind eye to their falsity.  *See, e.g., Savage v.
Unknown FBI Agents,* 142 F.3d 436, at *2 (6th Cir. 1998) (affirming award of
sanctions under Fed. R. Civ. P. 11 to a defendant where the plaintiff "failed to
make an adequate inquiry before filing his complaint."); *Mabbitt v. Midwestern
Audit Serv., Inc.*, 2008 WL 1840620, *3 (E.D. Mich. Apr. 23, 2008) ("The Court
believes that § 1927 sanctions are appropriate in this case, as Plaintiff's counsel
knew or reasonably should have known that the claims asserted by Plaintiff were
frivolous."); *see also Bailey, supra*, 236 Fed.Appx. at 205.  Dice and its counsel
further crossed the line when they continued to litigate despite the fact that Dice
had failed to develop any evidentiary support for its claims.  *See, e.g., Runfola &
Assoc., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 373-74 (6th Cir. 1996)
(The "gravamen of Rule 11 [is not in] the filing of the claim that eventually turns

out to be meritless, but rather the persistence in pursuing that claim after the pleader has or should have become aware of its lack of merit."); *see also Bailey, supra*, 236 Fed.Appx. at 205.  Dice then filed a reconsideration motion in which it not only made false assertions, but attempted again to bring a new claim into the lawsuit.

Finally, as previously discussed, Dice engaged in discovery misconduct and continually disregarded its obligations under the Federal Rules of Civil Procedure. Bold incurred significant additional fees and costs as a result.  The Sixth Circuit stated in *Ridder, supra*, 109 F.3d at 298, that "fees may be assessed without a finding of bad faith, 'at least when an attorney knows or reasonably should know that … his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.'"  Where, as here, obstruction has occurred in the litigation of **frivolous** claims, then the standard set forth in *Ridder* must certainly be met. Dice's unjustifiable actions in the discovery process provide additional grounds for an award of costs and fees under § 1927 or the Court's inherent authority.

### 4.    Determining an Award of Fees and Costs

The accepted method for determining an appropriate fee award is to calculate the "lodestar" amount, which is the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate.  *Imwalle v.*

*Reliance Med. Products, Inc.*, 515 F.3d 531, 551 (6th Cir. 2008).  In determining a

reasonable fee, the court may consider factors such as:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service properly; (4)
> the preclusion of other employment by the attorney due to acceptance of
> the case; (5) the customary fee; (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances; (8) the
> amount involved and the results obtained; (9) the experience, reputation,
> and ability of the attorneys; (10) the "undesirability" of the case; (11) the
> nature and length of the professional relationship with the client; and (12)
> awards in similar cases.

*Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002).

As set forth in the Affidavit of R. Christopher Cataldo, attached as **Ex. 5** (the

"Affidavit"), Bold seeks to recover **$277,599.11** in fees and costs for amounts

billed to Bold through January 31, 2014.  In addition, Bold seeks recovery of

additional amounts incurred, but which have not yet been billed.  A supplemental

affidavit setting forth these amounts will be submitted.  The reasonableness of the

amounts sought by Bold are addressed in Mr. Cataldo's Affidavit, and in the

Affidavit of George D. Moustakas, attached as **Exhibit 6**.

## CONCLUSION

For the reasons stated above, Bold requests that the Court enter an order.

(a)      Granting this motion;

(b)     Requiring Dice and/or its counsel to pay to Bold within 21 days of the

date of entry of such order the amount of **$277,599.11** for fees and costs billed to

Bold through January 31, 2014;

(c)     Requiring Dice and/or its counsel to make payment to Bold, within 21

days of the date of entry of such order, for amounts billed to Bold after January 31,

2014 (to be provided); and,

(d)     Granting such other relief as the Court deems appropriate.

Respectfully submitted,

Jaffe, Raitt, Heuer & Weiss, P.C.

/s/ R. Christopher Cataldo
R. Christopher Cataldo (P39353)
David S. McDaniel (P56994)
Attorneys for Defendant
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
Dated: March 12, 2014                    (248) 351-3000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of March, 2014, I electronically filed

the foregoing paper with the clerk of the court using the ECF system which will

send notification of such filing to all the parties of record.

Date:  March 12, 2014          /s/  Jacqueline D. Delevie
Jacqueline D. Delevie